**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**PROGRESSIVE PREFERRED
INSURANCE COMPANY**,

      Plaintiff,

v.                                                        No. CIV **07-0121 MCA/ACT**

**JANET SCHREIBER**,

      Defendant,

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Janet Schreiber's *Motion to Dismiss* [Doc. 6] filed on March 14, 2007. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants Defendant's motion and dismisses this action without prejudice for the reasons set forth below.

**I.**      **BACKGROUND**

On February 1, 2007, Plaintiff Progressive Preferred Insurance Company filed this civil action against Defendant Janet Schreiber seeking a declaratory judgment that Plaintiff has the right or obligation to deny coverage to Defendant under the terms of an automobile insurance policy which provides that:

> No person who engages in fraudulent conduct in connection with an accident or claim shall be entitled to receive any payment under this policy.
>
> We may deny coverage for an accident or loss if you or an insured person have knowingly concealed or misrepresented any material fact or circumstance, or

>   engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

[Doc. 1; Ex. C to Doc. 8.]  According to Plaintiff, these provisions of the policy came into dispute as a result of Defendant's presentation of an underinsured motorist claim arising from her involvement in a motor vehicle accident that occurred on January 3, 2003.  Plaintiff's *Complaint* asserts that this Court has subject-matter jurisdiction over the parties' dispute because they are of diverse citizenship and the amount in controversy with respect to Defendant's underinsured motorist claim exceeds $75,000.

Defendant does not challenge the diversity of the parties' citizenship or the amount in controversy but nevertheless contends that this Court lacks jurisdiction because of an ongoing arbitration proceeding in which Plaintiff previously raised the same defense on which it seeks a declaratory judgment here.  The second count of Plaintiff's *Complaint* seeks to enjoin those arbitration proceedings.  [Doc. 1.]

On March 14, 2007, Defendant filed a motion to dismiss both counts of Plaintiff's *Complaint* so that the matter may return to the arbitration panel.  [Doc. 6.]  In response to Defendant's motion, Plaintiff conceded that the request for injunctive relief in the second count of the *Complaint* should be dismissed without prejudice.  [Doc. 8.]  In addition, the arbitration panel decided to stay the arbitration proceedings while Defendant's motion to dismiss is pending, thereby obviating any need for an injunction from this Court.  [Ex. 1 to Doc. 15.]

As grounds for dismissing this action and returning the matter to the arbitration panel, Defendant points to the following language from the arbitration clause of the insurance policy:

> Determination of whether an **insured person** is legally entitled to recover damages, and the amount of damages, will be made by agreement between the **insured person** and **us**. If no agreement is reached, the decision shall be made by arbitration if **we** or the **insured person** make a written demand for arbitration prior to the expiration of the **bodily injury** statute of limitations in the state in which the **accident** occurred.
>
> . . .
>
> Unless both parties agree otherwise, arbitration will take place in the county in which the **insured person** resides. Local rules of procedure and evidence will apply.
>
> A decision agreed to by two of the arbitrators will be binding as to whether the **insured person** is legally entitled to recover damages from an uninsured or underinsured motorist, and the amount of damages. The arbitrators shall have no authority to award an amount in excess of the Limit of Liability. The decision of the arbitrators is binding only if the amount of the award does not exceed the minimum limit of liability specified by the financial responsibility laws of the state listed on **your** application as **your** residence. If the award of the arbitrators is in an amount which exceeds this minimum limit, either party may demand the right to a trial.

[Ex. 2 to Doc. 6; Ex. C to Doc. 8.] Defendant contends that Plaintiff invoked these arbitration provisions with respect to the company's fraud, concealment, or misrepresentation defense by filing a motion for summary judgment with the arbitration panel on December 28, 2006. [Ex. 1 to Doc. 6.]

In the proceedings before the arbitration panel, Defendant moved to strike Plaintiff's summary judgment motion on a number of grounds, including the argument that the policy's

arbitration clause does not apply to the fraud, concealment, or misrepresentation defense. It must be noted, however, that Defendant also relied on the argument that Plaintiff's motion for summary judgment was not timely presented to the arbitration panel, because it was filed only a few days before the panel was set to hear the matter, leaving Defendant with insufficient time to prepare an adequate response. [Ex. A to Doc. 8.]

Curiously, the parties' positions have switched in this litigation. Now Plaintiff has adopted the above argument from the *Motion to Strike* that Defendant filed in the arbitration proceeding, while Defendant argues that Plaintiff is bound by its prior decision to file a motion for summary judgment invoking a ruling from the arbitration panel on the fraud, concealment, or misrepresentation defense.

## II.   ANALYSIS

Motions to dismiss for lack of subject-matter jurisdiction generally take two forms. See Holt v. United States, 46 F.3d 1000, 1002 (10th Cir. 1995). The first, a facial attack on the complaint's allegations as to subject-matter jurisdiction, questions the sufficiency of the complaint and requires the district court to accept as true the allegations set forth therein. See id.  Alternatively, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject-matter jurisdiction depends. See id. at 1003. When reviewing a factual attack on subject-matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  Indeed, a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed

jurisdictional facts under Rule 12(b)(1) without converting the motion to a Rule 56 motion for summary judgment.  See id.

On the other hand, a Rule 12(b)(1) motion should be treated as a Rule 56 motion when resolution of the jurisdictional question is intertwined with the merits of the case. See id.; Redmon v. United States, 934 F.2d 1151, 1155 (10th Cir.1991).  Summary judgment under Fed. R. Civ. P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed. R. Civ. P. 56(e).  Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Id.  Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In this case, the resolution of Defendant's motion to dismiss depends on the Court's answer to the legal question of whether the arbitration clause in the parties' insurance contract evinces an agreement to arbitrate the applicability of the fraud, concealment, or misrepresentation provisions contained elsewhere in that contract.  See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U. S. 614, 626 (1985).  If  such an agreement is

present, the Court must then determine "whether legal constraints external to the parties' agreement foreclose[ ] the arbitration of those claims." Id. at 628.

As in any contract case, the parties' intent is controlling with regard to whether they agreed to arbitrate a particular dispute, and determining intent is a question of law for the Court. See Armijo v. Prudential Ins. Co., 72 F. 3d 793, 797 (10th Cir. 1995) (citing Mitsubishi Motors Corp., 473 U. S. at 626). Under federal law, "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" Mitsubishi Motors Corp., 473 U.S. at 626 (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)); accord Williams v. Imhoff, 203 F. 3d 758, 764 (10th Cir. 2000). Similarly, the New Mexico Supreme Court has recognized that "there is a strong public-policy preference in favor of resolving disputes through arbitration" in this state; it follows that "[w]hen the parties agree to arbitrate any potential claims or disputes arising out of their relationships by contract or otherwise, the arbitration agreement will be given broad interpretation unless the parties themselves limit arbitration to specific areas or matters." McMillan v. Allstate Indem. Co., 2004-NMSC-002, ¶¶ 9-10, 135 N.M. 17, 84 P.3d 65.

The New Mexico Court of Appeals addressed a very similar issue in California Casualty Ins. Co. v. Garcia-Price, 2003-NMCA-044, 133 N.M. 439, 63 P.3d 1159. The policy at issue in that case contained language "allowing either party to select arbitration '[i]f an **insured** and we do not agree . . . [w]hether that person is legally entitled to recover

damages . . . or [as] to the amount of damages . . . .'" Id. ¶¶ 4, 7. The insurance company argued that this policy language did not include "coverage issues," *i.e.*, whether the policy's definition of an "accident" included the intentional killing of the person for whom coverage was sought; whether the criminal conduct of uninsured/underinsured motorists was an independent, intervening cause of that person's death; whether coverage extended to a person who did not reside with the owner of the policy and was not listed as a driver on the policy; whether the death arose out of the ownership, maintenance, or use of an uninsured vehicle; and whether the insured gave prompt notice of the accident. See id. ¶ 8.

The New Mexico Court of Appeals agreed that a district court hearing a declaratory judgment action in which this argument is presented must conduct a "threshold analysis" of "whether the arbitration clause applies to coverage issues," before sending the case to arbitration. Id. ¶¶ 11, 12. On the other hand, the result of this threshold analysis may be that "coverage issues" *are* subject to arbitration insofar as the arbitration clause's use of the phrase "'legally entitled to recover' includes coverage issues." Id. ¶ 16.

Following the New Mexico Court of Appeals' reasoning in Garcia-Price, Defendant asserts that the applicability of the fraud, concealment, and misrepresentation provisions of the parties' insurance contract presents a "coverage issue" that falls within the arbitration panel's authority to decide "whether an **insured person** is legally entitled to recover damages, and the amount of damages." Plaintiff attempts to distinguish Garcia-Price on the grounds that there could be differences between the specific language of the insurance policy at issue in that case and the language used in the insurance policy at issue here. In particular,

Plaintiff points out that the Garcia-Price opinion quotes selectively from the California Casualty Insurance Company's policy and omits some portions of that policy through the use of ellipses.

I am not persuaded that the analysis applicable to the case at bar is distinguishable from the reasoning of Garcia-Price. As in that case, the arbitration clause in the parties' insurance contract "is broadly framed. It does not discuss or distinguish between 'liability' and 'coverage.'" Id. ¶ 18. The specific limitations on whether the arbitration panel's decision is binding pertain only to the panel's authority to award an amount of damages that exceeds the policy's "Limit of Liability" [Ex. 2 to Doc. 6; Ex. C to Doc. 8], not the more basic issue of "whether a person can recover at all." Id.

To the extent that there is any ambiguity as to whether the language of the arbitration clause is intended to include or exclude arbitration of the fraud, concealment, or misrepresentation provisions stated elsewhere in the insurance contract, the policy considerations and principles of contract interpretation cited in Garcia-Price favor resolving this ambiguity in favor of allowing the arbitration panel to decide the applicability of these provisions. See id. ¶¶ 21, 22. In addition, the legal constraints external to the contract bolster and do not foreclose arbitration of the issues on which Plaintiff seeks a declaratory judgment from this Court.

Under the circumstances presented here, the fraud, concealment, and misrepresentation provisions of the parties' insurance contract are intertwined with the "[l]ocal rules of procedure and evidence" that the arbitration panel must apply to the dispute

as a whole, because by Plaintiff's own admission those procedural rules include the authority to sanction a party for discovery abuses under Rule 1-037 NMRA 2007. [Doc. 18, at 2.] Construing the arbitration clause as making fine distinctions between conduct that triggers sanctions for discovery abuse under this rule and conduct that triggers the fraud, concealment, or misrepresentation provisions of the policy would result in a "piecemeal approach [that] would negate the principal purpose of arbitration–a prompt and economical adjudication that avoids the delay and expense resulting from having matters resolved in court."  Garcia-Price, 2003-NMCA-045, ¶ 21.

To presume that a person buying an insurance policy would be able to discern such fine distinctions within the general language of the policy's arbitration clause also would run counter to the principle that ambiguities in a contract are construed against the drafter–in this case the insurance company.  See id. ¶¶ 20, 22.  Here Plaintiff bears the burden of plainly stating in the policy that the fraud, concealment, and misrepresentation provisions are not subject to arbitration.  See id.  Because it has not done so, the Court construes those provisions as falling within the arbitration panel's authority to determine whether Plaintiff "is legally entitled to recover damages" from an uninsured or underinsured motorist, and to apply "[l]ocal rules of procedure and evidence" in doing so.

## III.   CONCLUSION

For the foregoing reasons, the Court determines that the issues raised in this declaratory judgment action fall within the authority of the arbitration panel.  It follows that this action must be dismissed without prejudice for lack of jurisdiction.  In so ruling, the

Court expresses no opinion on the merits of Plaintiff's fraud, concealment, or misrepresentation defense.

**IT IS, THEREFORE, ORDERED** that Defendant Janet Schreiber's *Motion to Dismiss* [Doc. 6] is **GRANTED**, and this action is **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED** this 21st day of September, 2007, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge